**In re Anonymous Nos. 49 D.B. 75 and 18 D.B. 76**

Disciplinary Board Docket nos. 49 D.B. 75 and 18 D.B. 76.

*To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:*

HENRY, *Board Member*, November 30, 1976— Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above petitions for discipline.

## I. HISTORY OF PROCEEDINGS

On July 31, 1974, respondent, [ ] was convicted on findings by the Honorable [ ] in the Court of Common Pleas of [ ] on two charges of conspiracy to obtain money by false pretense, to alter and falsify corporate books, and to forge and deface records. The charges involved the back-dating of the filing of praecipes for summons in trespass in two actions in which respondent represented plaintiff in claims for personal injuries. The statute of limitations had run in these actions and the praecipes were back-dated to "cure" this defect. An employe

in the prothonotary's office assisted respondent in this scheme. Respondent was sentenced on May 27, 1975, and on July 16, 1975, your honorable court entered an order to number 96 Disciplinary Docket No. 1 suspending respondent from practice and referring the matter to this board for institution of formal proceedings.

On February 9, 1976, a petition for discipline was filed by disciplinary counsel to number 49 D.B. 75, setting forth the conviction and including a second charge alleging that respondent had forged the endorsement of clients on checks payable to their order as the result of the settlement of a personal injury claim and appropriated the proceeds to his own use. No answer was filed and the matter was referred to a hearing committee [   ].

Prior to the hearing, a second petition for discipline was filed to number 18 D.B. 76, charging that respondent represented clients in criminal proceedings on two occasions subsequent to the order of your honorable court suspending him from practice. The petition also charged that respondent had received the sum of $2,500 from a couple for the purpose of arranging for them to adopt a child and had agreed to return this money, less incidental expenses not to exceed $500, if he was unable to secure a child. The petition alleged that respondent failed to obtain the child and when the clients demanded the return of their money, respondent sent them two checks on an account that had been closed.

On May 21, 1976, a stipulation was entered into by disciplinary counsel and counsel for respondent to consolidate the two petitions for hearing. The hearing was held on June 28, 1976, before [   ], Esq., chairman and [   ], Esq. The third hearing

committee member did not participate in the proceedings with the agreement of counsel for both parties. Respondent was represented at the hearing by [ ], Esq. Respondent did not testify and no witnesses were presented on his behalf. On September 9, 1976, the hearing committee filed its report finding that the evidence sustained all of the charges and recommending that respondent be disbarred. No objections to the report were filed within the prescribed time and the matter was referred to this board for review and recommendation.

## II. DISCUSSION

The report of the hearing committee carefully analyzed the evidence with respect to each of the charges and arrived at findings of fact which were supported by the evidence and are adopted by the board as its own. Based upon these findings, the five incidents to be considered can be summarized as follows:

### A. Conspiracy Conviction

A criminal complaint and warrant of arrest were issued against respondent on February 14, 1971. Respondent was subsequently indicted by the [ ] grand jury and on March 10,1972, respondent was arraigned and pleaded not guilty to all counts. On July 31, 1974, following a trial without jury, respondent was convicted on two counts of conspiracy to obtain money by false pretense, to alter and falsify corporate books and to forge and deface records. He was acquitted of other charges. On May 27, 1975, respondent was sentenced to six months concurrent non-reporting probation on both counts.

Respondent appealed his conviction to the Superior Court but subsequently, on November 21, 1975, discontinued the appeal.

The basis of the conspiracy conviction was the arrangement by respondent with an employe in the prothonotary's office of the court of common pleas of [ ] to back-date the filing of praecipes for summons in trespass in two personal injury actions in order to avoid the statute of limitations which had expired. A certificate of conviction of an attorney for a crime punishable by imprisonment for one year or more is conclusive evidence of the commission of that crime in a disciplinary proceeding: Rule 214(b).

Respondent's actions violated Disciplinary Rules 1-102 (A)(3) (Illegal conduct involving moral turpitude), 1-102(A)(4) (Conduct involving dishonesty, fraud, deceit or misrepresentation), 1-102(A)(5) (Conduct prejudicial to the administration of justice), 1-102(A)(6) (Conduct that adversely reflects upon fitness to practice law), and 7-102(A)(2-6), (8) (Representing a client within the bounds of the law).

## B. [A]

Respondent was retained to represent [A] and his minor son, [B],in a personal injury action. The matter was settled with the insurer of defendants and, pursuant to a petition to accept compromise of settlement of a minor's claim, the settlement was approved by the court of common pleas of [ ] on February 4, 1974, awarding the total settlement of $6,750 as follows:

| | |
|---|---|
| [Respondent], for counsel fees | $2,250 |
| [Respondent], for legal costs and investigative expenses | $ 135 |

| | |
|---|---|
| [A], for partial reimbursement of hospital and medical expenses | $1,000 |
| [A], for [B], the Balance of | $3,365 |

On February 5, 1974, the insurance company sent respondent four checks in conformance with the order approving the settlement. Respondent did not inform his clients of the settlement or the receipt of the proceeds. He forged the endorsement of [A], on the two checks totaling $4,365 payable to Mr. [A] for his own use and his minor son's share of the settlement and cashed the checks himself. Subsequently, in April of 1975, respondent advised Mrs. [A] that the case had been settled for a total of $5,000. In July of 1975, Mrs. [A] saw a newspaper article reporting that respondent had been suspended and immediately called respondent's home. [Respondent] returned the call and told her that his suspension would hold up the settlement. Later, Mrs. [A] checked with the insurance company and found that the case had been settled and checks issued more than 18 months earlier. The [A's] then filed a complaint with the office of the disciplinary counsel and in December of 1975, respondent finally met with the family and paid to them the amount due to them from the settlement. Respondent's conduct constituted violations of Disciplinary Rules 1-102(A)(3) (Illegal conduct involving moral turpitude); 1-102(A)(4) (Conduct involving dishonesty, fraud, deceit or misrepresentation); 1-102(A)(5) (Conduct prejudicial to the administration of justice); 1-102(A)(6) (Conduct adversely reflecting on fitness to practice law); 7-102(A)(8) (Engaging in illegal conduct); and 9-102(A) and (B) (Prompt notification, identification, accounting and paying over of clients' funds).

## C. [C]

In June of 1973, respondent agreed to act as an intermediary and counsel for [Mr. & Mrs. C] for the purpose of arranging for them to adopt a child. The [Cs] paid him the sum of $2,500 to be held in escrow to be applied to the payment of legal and medical expenses incident to adoption proceedings. Respondent agreed that in the event he was unable to secure a child acceptable to the [Cs] for adoption, he would return said funds less any incidental expenses not to exceed $500. Respondent failed to obtain a child for his clients and they demanded the return of the $2,500. On August 19, 1974, [respondent] sent the [Cs] two checks dated August 26 and September 9, 1974, in the total sum of $2,500, drawn on his account in the [   ] Bank and Trust Company. On August 24, 1974, respondent closed this account by withdrawing the remaining balance of $200. Furthermore, he did not have sufficient funds in the account to cover the checks at the time they were mailed. Subsequently, [respondent] did pay the [Cs] $500 but the balance was not paid at the time of the hearing. Respondent's conduct in this matter involved violations of the same disciplinary rules as those referred to above in the [A] matter.

## D. [D]

After respondent was suspended from the practice of law by your honorable court, he was hired as an investigator by [E], Esq., a member of the Bar of [   ] County. Attorney [E] was representing [D], with respect to a murder charge in [   ] County. [D] was scheduled for arraignment on April 9, 1976, in the

courtroom of the Honorable [F]. Attorney [E] was away on vacation and [respondent] was present in the courtroom. Prior to the arraignment, Judge [F] asked who represented defendant. Respondent stated that defendant was represented by [E], Esq. and signed [E's] name to a praecipe for appearance. At the time of the arraignment, [respondent] came to the front of the courtroom and stood with defendant while he pleaded not guilty to the charges. In the course of these proceedings, the court repeatedly addressed respondent as [E]. Respondent did not deny that he was Mr. [E] or disclose his true identity. The matter was subsequently brought to the attention of Judge [F] by two attorneys who were present at the courtroom and acquainted with respondent and the fact of his suspension. Respondent intentionally violated the order of suspension and deceived the court. This conduct constituted violations of Disciplinary Rules 1-102(A)(5) (Conduct prejudicial to the administration of justice); 1-102(A)(6) (Conduct adversely reflecting on fitness to practice law); and, 7-102(A)(5) and (8) (Representing a client within the bounds of the law).

## D. [G]

On March 11, 1976, respondent appeared at a preliminary hearing before District Justice [ ] on behalf of [G] , a client of [E], Esq. Respondent asked that Mr. [E's] name appear on the transcript as attorney for Mrs. [G]. The justice was not aware at that time that [respondent] had been suspended from the practice of law. In the course of the hearing, respondent cross-examined the police officer and made argument on behalf of Mrs. [G], urging

dismissal of the case on technical grounds. Respondent's conduct constitutes violations of Disciplinary Rules 1-102(A)(5) (Conduct prejudicial to the administration of justice); and, 1-102(A)(6) (Conduct adversely reflecting on fitness to practice law).

Following the hearing, the hearing committee, with the consent of counsel for respondent, received records concerning prior discipline of respondent by the Committee of Censors of the [  ] Bar on five separate occasions from 1960 to 1970. Two instances involved the misuse and commingling of clients' money and bad checks. The others involved neglect of clients' matters. Respondent received informal admonition, reprimand and censure in these cases.

This board has no hesitancy in affirming the recommendation of the hearing committee that respondent be disbarred. He has exhibited a callous disregard for his clients, the courts and the judicial system. His actions undermine public confidence in the administration of justice and disgrace his profession. Respondent altered and defaced court records in an effort to conceal his own negligence and to obtain money by false pretenses for his client and himself. This offense is serious enough in its own right to warrant disbarment. However, the evidence also establishes that respondent appropriated clients' funds for his own use and deliberately lied to them in response to their inquiries. On two occasions he intentionally violated the order of your honorable court suspending him from the practice of law and he also deceived a judge in the court of common pleas.

The board is satisfied that any lesser form of discipline would be inadequate, not to punish respondent but to protect the public. It is apparent from the

record that respondent, [   ], is completely insensitive to the most minimum standard of professional conduct and his obligations to the court, his profession and the public. It is of significance that five separate appearances before the Board of Censors of the [   ] Bar prior to 1970 made no impression upon him. Neither did the indictments for backdating court records since it is noted that his embezzlement of the [A's] money and misappropriation of the [C's] money both occurred after these charges had been brought. Finally, he has demonstrated a cavalier attitude toward your honorable court's order suspending him from the practice of law pending the final disposition of the disciplinary matters. In the opinion of the board, respondent's conduct during the period of his suspension eliminates any possible consideration of suspension as appropriate discipline in this case and [respondent] should be disbarred.

## III. RECOMMENDATION

For the reasons set forth above, the disciplinary board recommends to your honorable court that respondent, [   ], be disbarred pursuant to Rule 204(1) of the Pennsylvania Rules of Disciplinary Enforcement.

## ORDER

JONES, *C.J.*, And now, January 11, 1977, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania, dated November 30, 1976, recommending that pursuant to Rule 204(1) of the Pennsylvania Rules of Disciplinary Enforcement, [respondent] of [   ] County,

be disbarred from the practice of law in the Commonwealth of Pennsylvania, is hereby approved; and it is ordered, that the said [respondent], be, and he is hereby disbarred from the Bar of the Supreme Court and in all the courts under the supervisory jurisdiction of the Supreme Court of Pennsylvania.